REGAN, Judge.
Plaintiff, John M. Bacon, conducting his business under the trade-name of Bacon Lumber Company, instituted this suit against Daniel J. McAuliffe, who operated his business as D. J. McAuliffe Company, his son, Ernest D. J. McAuliffe, P. W. Sad-ler, contractor and his insurer, the Maryland Casualty Company, endeavoring to recover the sum of $452.31 for lumber sold and delivered to the McAuliffe Company, on August 4, 1948, which was used in the erection of Ernest McAuliffe’s residence.
Plaintiff’s suit against all of the defendants except Daniel J. McAuliffe, doing business as the D. J. McAuliffe Company, was dismissed on the exception of no right or cause of action and thereafter plaintiff was permitted to amend his petition in order to state a cause of action against the remaining defendant, McAuliffe Company. Plaintiff did not appeal from the judgment which dismissed his suit against the three aforementioned defendants.
The defendant then answered and denied that he was indebted unto plaintiff in any sum whatsoever.
From a judgment in favor of defendant dismissing plaintiff’s suit, he prosecutes this appeal.
The record reveals that prior to August 4, 1948, the defendant’s son, Ernest D. J. McAuliffe, entered into a building contract with P. W. Sadler for the erection of a residence in 157 Glenwood Drive, Jefferson Parish, Louisiana; during the course of the construction .thereof, Ernest Mc-Auliffe experienced considerable friction with the contractor Sadler, in that he, among other complaints, was not procuring the quality of material agreed upon.
The factual dilemna with which we are ■herewith concerned arose when the contractor was unable to locate clear white oak flooring of a quality specified in the contract.
The plaintiff’s version thereof reflects that Ernest McAuliffe . contacted William Tobin, a man apparently experienced in the solution of such dilemnas and a former employee of both the McAuliffe Company and the Bacon Lumber Company, which companies are neighbors, located about two squares from each other; the flooring was located by Tobin at the Bacon Lumber Company, however, at that time there was not a sufficient quantity on hand, but Ernest McAuliffe, who accompanied Tobin to the lumber yard, was informed by either or both Edward Bacon, Sales Manager of the Bacon Lumber Company, and Jessie Gibson, the yard foreman, that they expected a sufficient shipment of this quality of flooring shortly. When this lumber was received D. J. McAuliffe was notified thereof. Thereafter, D. J. McAuliffe and his son (who was also an employee of the Mc-Auliffe Company) visited the yards of the Bacon Lumber Company, inspected the lumber, requested Gibson to “hold it” and informed him that D. J. McAuliffe would have it picked up when his son was prepared to use it; on August 4, 1948, a truck, operated by- an employee of P. W. Sadler, the contractor, visited the Bacon Lumber Company and the driver thereof asked Gibson for the “McAuliffe flooring.” Gibson ascertained from the driver the ownership of the truck and then the lumber was placed thereon, transported to the site of the house in the course of construction in Glenwood Drive and was there used as flooring. The dray receipt was dated August 4, 1948, consigned to D. J. McAuliffe Company, c/o P. W. Sadler, 157 Glenwood Drive and described as 1689 feet of' 1 x 3 clear plain white oak flooring amounting to the sum of $452.31. On August 5, 1948, an invoice was sent by the Bacon Lumber Company to D. J. McAuliffe Company, 1432 S. Peter Street, New Orleans, Louisiana, describing the quantity, quality and price of the lumber as related on the dray receipt. Subsequently, the Bacon Lumber Company was unable to effect an amicable collection of the amount of the aforementioned invoice from D .J. McAuliffe and it was then that John Bacon, the owner of the Bacon Lumber Company, was the personal *251 recipient of a telephone call from both Ernest McAuliffe and the attorney for either or both Ernest and D. J. McAuliffe, to the effect that Bacon should preserve his rights by filing a lien against the property located in Glenwood Drive. On both occasions Bacon informed Ernest McAul-iffe and the attorney that he never even knew Sadler and more pertinently that he had only dealt with D. J. McAuliffe, who had an established business relationship and credit rating with the Bacon Lumber Company. The McAuliffe Company was engaged in the business of “ship chandlery and ship repair” and had purchsed lumber in connection therewith from the Bacon Lumber 'Company for a period of approximately two years. John Bacon further testified that he was engaged in the wholesale lumber business; that white oak flooring was very scarce; he very rarely sold lumber to contractors, but retail lumber yards, and only sold this scarce flooring to D. J. McAuliffe because he was a neighbor and had done business with him over a relatively long period of time.
Defendant, on the other hand, in endeavoring to resist plaintiff’s demand, conceded that he had done business with the Bacon Lumber Company on behalf of the McAuliffe Company and also admitted that he, together with his son, examined the quality of the flooring at the Bacon Lumber Company, prior to the receipt by the Bacon Lumber Company of the quantity of flooring specified in the contract; he stated that he inspected this flooring because he was well qualified to evaluate the quality thereof, since he used lumber in his business and was, therefore, prepared by virtue of his years of experience to know “when it is good, bad or indifferent” and he concluded that it was satisfactory. He further admits that he discussed the lumber “with’ a man” at the Bacon Lumber Company, but that on the date of the trial he did not recall “the details of the discussion”, that “it is too far back to remember them.” He further failed to recall whether he mentioned “to the man at the Bacon Lumber Company” anything about his son’s building contract with Sadler; and he insists that he did not again return to the Bacon Lumber Company when sufficient quantity of the flooring was actually received by them.
The son, Ernest McAuliffe, in endeavoring to corroborate and subtantiate the testimony of his father, stated that clear white oak flooring in '1948 was a very scarce commodity, particularly the quality which he desired; that his contractor, Sad-ler, was unable to procure this flooring and from past experiences with Sadler he “found it advantageous to inspect everything that he was buying to put in my house, because after he had purchased it and brought it out to the house it was kind of hard to make him return it”; the contractor had located oak flooring in two other lumber yards but that it was not of the quality agreed upon; he then asked Sadler if he would like him to try to locate the flooring and the contractor acquiesced; he contacted Tobin and together they located the flooring at the Bacon Lumber Company, but the quantity was insufficient. He was then informed by the Company that they expected a shipment of 1500 feet shortly. When it was received he inspected it and “told someone at the Bacon Lumber Company, I don’t remember his name now, that the contractor would be by to pick it up”, but that he could not remember if the man that he spoke to at the Bacon Lumber Company was informed by him “that P. W. Sadler was the contractor or not.”
Plaintiff contends that the sale of the lumber, which occurred on August 4, 1948, was made to D. J. McAuliffe, doing business as the D. J. McAuliffe Company, while defendant, on the other hand, insists that the lumber was sold to P. W. Sadler, the contractor engaged by his son to erect a residence in Glenwood Drive and that he was in no way personally obligated to pay for the material.
The only question posed for our consideration is one o'f fact — that is whether the plaintiff sold the lumber amounting to $452.31 to the defendant, D. J. McAuliffe or to P. W. Sadler, the contractor.
The trial court resolved the answer to this question in favor of the defendant, but our careful examination of the record *252 discloses reversible error in its conclusions predicated on the facts contained therein.
It is true that the record is embellished with irrelevant disputations ad infinitum, however, the only fact with which we are concerned stands revealed as the signal light emanating from a watchtower and that is — neither the Bacon Lumber Company nor any of its employees ever knew Sadler, prior to or in connection with this sale, and that the lumber company intended to sell this flooring to D. J. McAuliffe, doing business as D. J. McAuliffe Lumber Company, who had a well established business relationship with Bacon and to no one else; on the other hand, it was Mc-Auliffe’s -intention to use both his favored customer and credit prestige in consummating the sale to himself for the benefit of his son, of an admittedly scarce and much sought after commodity in 1948.
We are usually reluctant to reverse the finding of a trial court based primarily on a question of fact, however, it is a self-evident principle, particularly predominant in the analysis of this case, that the appellate court occupies a position of distinct advantage in its search for fallacies and inconsistencies which may be in the record, for the reason that we are afforded the opportunity of leisurely using the method of comparing various portions of the transcribed testimony with other pertinent portions thereof; whereas the trial judge must, because of the very nature of his court, rely almost wholly on his memory to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testify during the course of the trial.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of John M. Bacon, doing business as the Bacon Lumber Company and against the defendant, Daniel J. McAuliffe, doing business as the D. J. McAuliffe Company, in the full sum of $452.31 with legal interest from judicial demand and for all costs.
Reversed.